AKZONA, INCORPORATED v. AMERICAN CREDIT INDEMNITY COMPANY
OF NEW YORK AND FIRST STATE INSURANCE COMPANY

No. 8328SC1325

(Filed 4 December 1984)

1. **Insurance § 6.2— credit insurance—ambiguous endorsement—interpreted against insurer**

   Where a credit insurance policy was 26 pages long, including 14 pages constituting 11 change endorsements, some of which were consistent with and supplemental to the primary policy and some of which replaced sections of the primary policy expressly or by implication, a compulsory filing endorsement which did not expressly provide that it was intended to substitute for a portion of the primary policy was ambiguous and therefore properly interpreted against the insurer.

2. **Insurance § 8— credit insurance—waiver—statement by insurer that no claim filing necessary**

   A credit insurer waived a compulsory filing endorsement which required notice before an account became more than three months overdue when it responded to an inquiry from plaintiff's subsidiary about whether bankruptcy filings by two of the covered debtor's guarantors constituted insolvency under the policy by stating that no claim filing was necessary at that time.

3. **Rules of Civil Procedure § 60.2— denial of motion to vacate partial summary judgment on new evidence—no abuse of discretion**

   There was no abuse of discretion in the denial of plaintiff's Rule 60(b) motion to vacate partial summary judgment for new evidence because the new evidence was merely cumulative, and there was no showing that it could not have been discovered by due diligence in time to present it at the original hearing.

4. **Rules of Civil Procedure § 60.2— Rule 60 motion for relief "for any other reason"—more properly for new evidence—considered as new evidence**

   G.S. 1A-1, Rule 60(b)(6) grants relief from a judgment "for any other reason," i.e., any reason other than those contained in Rule 60(b)(1)-(5), and a motion properly within the scope of Rule 60(b)(2) will be considered under that rule even though designated as under Rule 60(b)(6).

5. **Insurance § 6.1— credit insurance—meaning of gross loss**

   In an action on a credit insurance policy, the trial court properly interpreted "gross loss covered, filed and proved" as meaning the debtor's entire indebtedness during the policy period, rather than the portion of the indebtedness protected by the policy, which could never exceed the policy amount.

Akzona, Inc. v. Am. Credit Indem. Co.

**6. Pleadings § 37.1; Appeal and Error §§ 11, 24— argument on appeal precluded by answer, admissions, and unexcepted finding**

An excess insurer which contended that the insured had not satisfied the condition that it maintain $300,000 of primary coverage because the $300,000 primary policy carried a $50,000 deductible was precluded from taking that position on appeal because it had admitted in its answer that the primary policy had limits in the amount of $300,000; had signed stipulations stating that the coverage was $300,000; did not except to a finding of fact in the final judgment that the primary coverage was $300,000; alleged in its answer that its indebtedness would have been limited if timely notice had been filed, thus admitting indebtedness; and had participated in a "package deal" sold to plaintiff in which the primary and excess insurers were familiar with each other and familiar with the nature and content of their insurance policies. Even if the excess insurer had not waived its argument on appeal, the terms of the primary policy complied with the excess insurance requirement.

**7. Appeal and Error §§ 2, 11— credit insurance—argument on appeal—prohibited by failure to move to dismiss and by stipulation**

Where an excess insurance policy contained a provision that no claim would be allowed until the claim was determined to be legally valid and admitted by the primary insurer, the excess insurer may not argue that the insured cannot bring an action against it or that interest against it may not run until a final mandate from the Appellate Division is issued because the excess insurer never made a motion to dismiss and signed a stipulation that it had been properly served and joined. Furthermore, there is no authority requiring a final appellate judgment before interest is assessed against a party. G.S. 24-5, G.S. 1A-1, Rule 20.

APPEAL by defendants from *Howell, Judge.* Judgment entered 22 June 1983 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 23 October 1984.

This is an action by Akzona, Incorporated ("Akzona") against American Credit Indemnity Company of New York ("ACI") and First State Insurance Company ("First State") to recover under policies of credit insurance issued to cover the account of Victoria Fabrics Corporation ("Victoria") with Akzona's subsidiary, American Enka Company ("Enka").

Akzona alleged in its complaint that as a result of Victoria's insolvency, it sustained losses of over $546,000 due to it from Victoria. It alleged that ACI is liable to it for the full amount of the primary policy, $300,000, plus interest and costs, and that as excess insurer, First State is liable for the remainder of plaintiff's losses in an amount not exceeding $300,000, the excess coverage, again plus interest and costs. ACI has acknowledged approximate-

ly $46,000 worth of liability, but denies further liability under its policy, alleging that Enka failed to comply with a compulsory filing endorsement in its policy.

In support of its contention that it has no liability whatsoever, First State adopts ACI's arguments, and also argues separately that plaintiff failed to maintain $300,000 worth of primary coverage as required by First State's excess insurance policy.

Upon motions of all parties, an order for partial summary judgment was entered, construing the compulsory filing endorsement in plaintiff's favor. The trial court ruled that failure to comply with the endorsement did not provide for a forfeiture of policy coverage. Based upon subsequent discovery, defendants filed a motion under Rule 60(b)(6) to vacate the order. This motion was denied.

The case was tried, and the final judgment directed that ACI pay plaintiff $250,000 plus interest running from 5 November 1980 (two months from the date of plaintiff's claim under the policy), and that First State pay $246,369.46 with interest to run from the date of judgment. Defendants ACI and First State appeal.

*Redmond, Stevens, Loftin and Currie, by John S. Stevens and Thomas R. West, for plaintiff-appellee.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Russell P. Brannon, for defendant-appellant American Credit Indemnity Company.*

*Bennett, Kelly and Cagle, P.A., by E. Glenn Kelly, for defendant-appellant First State Insurance Company.*

VAUGHN, Chief Judge.

I

[1] The central issue on this appeal involves the construction of the compulsory filing endorsement to the ACI policy. Plaintiff, ACI, and First State all moved for partial summary judgment for the trial court to construe the endorsement. In his order, Judge Robert D. Lewis ruled that the compulsory filing endorsement

does not provide for a forfeiture of coverage for an otherwise covered account because of an insured's failure to file its claim in accordance with the filing provisions of the endorsement, but rather that the insured's failure to comply with the compulsory filing provisions affects claim settlement of all amounts received by the insured from First State. According to the trial court, then, the sole effect of noncompliance with the endorsement is to reinstate the provision for the deduction in any claim settlement of amounts received by Akzona from First State. Both ACI and First State argue that Judge Lewis erred in his ruling, contending that the language of the endorsement was susceptible to a single interpretation, namely, that Akzona was obligated thereunder to file its claim on the Victoria account before the account was three months past due, and the consequence of its failure to comply with the filing provisions was the forfeiture of coverage for that portion of Victoria's indebtedness not timely filed.

The change endorsement to the ACI policy, entitled "Compulsory Filing Endorsement," provides in pertinent part that

> if the Insured [Akzona] shall obtain an Insurance Policy from the First State Insurance Company which provides excess coverage on shipments made . . . to . . . Victorian [sic] Fabrics Corp. . . . then in such event, the Company [ACI] waives the provisions for the deduction in any Claim Settlement of all amounts received by the Insured from the First State Insurance Company, . . . subject to the following provisions: (a) The Insured, during the Insolvency period of this policy, must file a Notification of Claim and place the account of any debtor specified above with the Company for collection after said account shall have become due and payable under the original terms of sale but before it shall have become more than 3 months past due under the original terms of sale. . . . Failure of the Insured to comply with these provisions shall void the coverage on any indebtedness of the debtor or part thereof which is not filed with the Company for collection as provided by this paragraph.

The section of the primary policy entitled "Claim Settlement" enumerates certain deductions to be made from the gross loss sustained by the insured in order to arrive at a net loss figure. These deductions encompass "all amounts collected from the

debtor or obtained from any other source," which, absent waiver thereof, include amounts obtained from First State, the excess insurer. There is also a section in the primary policy entitled "Optional Filing of Past Due Accounts," which permits, but does not require, the insured to file with ACI for collection an account against a noninsolvent debtor before the account has become more than three months past due. The compulsory filing endorsement ends with the words, "Nothing herein contained shall be held to vary, alter, waive or extend any of the terms or conditions of said Policy, other than as above stated."

We start our analysis with the basic principle of insurance law that policies are to be given a reasonable interpretation. *Trust Co. v. Insurance Co.*, 6 N.C. App. 277, 170 S.E. 2d 72 (1969), *rev'd on other grounds*, 276 N.C. 348, 172 S.E. 2d 518 (1970). The policy before us is, quite frankly, a crazy quilt of a document. It is 26 pages long, 12 pages of which constitute the primary policy, 14 pages of which constitute 11 separate "change endorsements" to the policy, some of which are consistent with and therefore supplement the primary policy, and others which replace sections of the primary policy, either expressly or by implication. ACI's contention is that the compulsory filing endorsement was in part intended to substitute for that portion of the primary policy providing for optional filing of past due accounts. This is, however, less than clear from the policy itself. Nowhere in the compulsory filing endorsement does it expressly provide that "Optional Filing of Past Due Accounts" is no longer in effect. Any intention on the insurer's part to have the optional filing provision invalidated by implication through the change endorsement is further obscured by the language of the endorsement that it does not "vary, alter, waive or extend" the primary policy.

The net effect of these various policy provisions concerning claim filing of past due accounts of a non-insolvent debtor, particularly in light of the length and complexity of the policy, is the creation of ambiguity. *See Joyner v. Insurance*, 46 N.C. App. 807, 266 S.E. 2d 30, *review denied*, 301 N.C. 91 (1980) (test for ambiguity is what reasonable person in position of insured would have understood the language to mean, and not what insurer intended). *See also Blake v. Insurance Co.*, 38 N.C. App. 555, 248 S.E. 2d 388 (1978) (examine policy as whole, not piecemeal). Once it is established, as here, that policy language is ambiguous, it is only

necessary to apply the well-recognized principle of insurance law that if there is any doubt concerning the true meaning of a policy clause, the doubt is to be resolved against the insurer, who authored it. *E.g., Hallock v. Casualty Co.,* 207 N.C. 195, 176 S.E. 241 (1934). *Accord, Machinery Co. v. Insurance Co.,* 13 N.C. App. 85, 185 S.E. 2d 308, *cert. denied,* 280 N.C. 302, 186 S.E. 2d 176 (1972) (where provisions in policy conflict, those favorable to insured control). The trial court, then, was entirely correct in resolving ambiguities in the policy against the insurer ACI, and ruling that the compulsory filing endorsement did not provide for a forfeiture but only affected claim settlement. *See Woodell v. Ins. Co.,* 214 N.C. 496, 199 S.E. 719 (1938) (court will construe separate parts of insurance contract with a view to equitable enforcement; "harsh and literal" construction of procedural requirements not favored).

[2] Furthermore, even if ACI and First State's interpretation of the compulsory filing endorsement had been the proper one, ACI waived its right to rely upon the endorsement as to the indebtedness of Victoria to ACI's insured, Akzona.

The record contains the following exchange of correspondence between the parties: On 6 June 1980, Enka's assistant treasurer sent a telegram to ACI informing it that on 2 June 1980, two of Victoria's operating subsidiaries, both of which guaranteed Victoria's debt to Akzona, filed for bankruptcy. Enka then inquired, "Does this constitute insolvency under Paragraph 3 of [the ACI primary policy]? Please advise if claim should be filed at this time." On 9 June 1980, Enka received a written reply signed by ACI's vice-president, informing Enka that:

> The bankruptcy petition of the guarantors does not constitute an insolvency of the debtor as defined under Condition No. 3 of the policy. In view of this, you are not required to file a claim against the debtor at this time under the provisions of Condition No. 3 of your policy.

At ACI's request, receipt of this letter by plaintiff was acknowledged by the signature thereon of Enka's assistant treasurer. Enka did not file a claim at that time. Victoria went bankrupt on 26 August 1980, and Akzona filed its notification of claim pursuant to Condition No. 4 of the policy on 5 September

1980. We believe these facts establish a waiver of the conditions of the filing endorsement.

Waiver in insurance law is the intentional relinquishment of a known right. *Moore v. Prudential Insurance Company of America,* 166 F. Supp. 215 (M.D.N.C. 1958). An insurer may waive a provision of condition in an insurance policy which is for its own benefit, *Brandon v. Insurance Co.,* 301 N.C. 366, 271 S.E. 2d 380 (1980), waiver of such a provision being predicated on knowledge on the part of the insurer of pertinent facts and conduct thereafter inconsistent with an intent to enforce the condition. *Town of Mebane v. Insurance Co.,* 28 N.C. App. 27, 220 S.E. 2d 623 (1975). Although the parties disagree as to what rights an insured has under the compulsory filing endorsement, it is undisputed by the language of the endorsement that such rights may only be preserved by the filing of a notification of claim by the insured during the insolvency period of the policy.

The insured, Enka, was uncertain whether the bankruptcy filing of two of the debtor's guarantors constituted an insolvency under the policy that would necessitate the filing of a claim. Enka promptly requested a clarification of the policy from the insurer, although without specifying the particular policy provision under which a claim might have to be filed. ACI's response stated that the policy did not require Akzona to file a claim at that time under Condition No. 3, and then added:

> You must, however, be sure the proof of your claims against the guarantors in their bankruptcy proceedings are perfected in order to preserve your ability to file against the actual debtor.

This portion of the letter manifests ACI's understanding that the purpose of Akzona's inquiry was to make certain it was fully complying with the policy. ACI's letter purports to inform Akzona of what it needed to do to preserve *all* its rights under the policy, not merely those rights connected with compliance with Condition No. 3. Akzona did not file a claim in June 1980 based upon ACI's representations that no claim filing was needed at that time. Under these circumstances, ACI is estopped from asserting a defense based on the delinquency of the insured to file a claim. *See Kendrick v. Insurance Co.,* 124 N.C. 315, 32 S.E. 728 (1899) (where policy susceptible of two constructions, and insurance

agent gave it one, and insured was misled thereby, company could not claim forfeiture because the insured did not follow the other construction).

[3, 4]  We next address defendants' argument that the trial court abused its discretion in refusing to vacate the order allowing partial summary judgment under Rule 60(b) on the grounds that new evidence of the parties' course of dealing demonstrated a mutual understanding of the interpretation of the endorsement directly contradictory to that interpretation given to it by the trial court. In denying the motion to vacate, the trial court concluded that this "new" evidence was merely cumulative, and our review of the record satisfies us that the evidence was indeed cumulative. Furthermore, the evidence relied upon by defendants, contained in two depositions, was not "new evidence" as contemplated by the Rules of Civil Procedure, Rule 60(b)(2), *i.e.*, the defendants did not show that the evidence could not have been discovered by the exercise of due diligence in time to present it in the original proceeding. *Harris v. Medical Center,* 38 N.C. App. 716, 248 S.E. 2d 768 (1978). Defendants attempted to circumvent the definitional requirements for new evidence under Rule 60(b)(2) by designating their motion as one made under Rule 60(b)(6), which grants relief from a judgment or order for "any other reason justifying relief from the operation of the judgment." Defendants argue that Rule 60(b)(6) allows relief to be granted under extraordinary circumstances and where justice demands it. *Baylor v. Brown,* 46 N.C. App. 664, 266 S.E. 2d 9 (1980). Defendants' motion, however, was expressly based on newly discovered evidence, which brings it within the scope of Rule 60(b)(2), and not within the scope of Rule 60(b)(6), which speaks of any *other* reason, *i.e.,* any reason other than those contained in Rule 60(b)(1)-(5). Thus, this motion was not properly brought under Rule 60(b)(6), and defendants' discussion of Rule 60(b)(6) is inapposite.

We note that the only question for appellate determination on a Rule 60 motion is whether the trial court abused its discretion in denying the motion. *Sawyer v. Goodman,* 63 N.C. App. 191, 303 S.E. 2d 632, *review denied,* 309 N.C. 823, 310 S.E. 2d 352 (1983). No such abuse occurred here. Defendants suggest the trial court erred in denying their motion because it stated in its order that it had "no authority" to enter a ruling on the motion to vacate the partial summary judgment, which statement was legal-

ly incorrect. We reject defendants' argument. Judge Lewis' order states that *"[b]ased on the foregoing [findings],* the Court concludes that it has no authority to enter a ruling . . ." (emphasis added). These findings establish that the new evidence was cumulative, and therefore it would have been inappropriate to grant defendants' motion. Furthermore, in the last paragraph of the order Judge Lewis makes it clear that he is aware he has the authority to vacate his earlier order, *see Miller v. Miller,* 34 N.C. App. 209, 237 S.E. 2d 552 (1977), but is declining to exercise such authority here. The last paragraph reads:

> Notwithstanding the fact that the evidence presented by Defendant in support of its Motion was cumulative, the Court considered said evidence and is still of the opinion that the Court's ruling as expressed in the previous partial Summary Judgment entered is correct.

[5] ACI and First State next contend that the trial court erred in its definition of "gross loss covered, filed and proved" as used in the claim settlement section of the ACI policy. The claim settlement section sets out the method by which net loss is calculated. "Gross loss covered, filed and proved" is the starting point of this calculation, that is, before any deductions are made. The insurers argue that the error in definition was prejudicial in that it increased their liability under their respective policies. We disagree with defendants, and conclude that the trial court correctly defined the phrase.

The parties stipulated that Akzona properly filed and proved a loss of $546,349.46 arising during the time period covered by the ACI policy. Thus, the parties agree that the "gross loss filed and proved" is $546,349.46. Their dispute on this issue involves the meaning of the word "covered." The trial court concluded, and plaintiff here contends, that gross loss covered means the entire indebtedness of Victoria to Akzona arising from sales during the policy period, as that indebtedness existed on the date of insolvency, here, $546,349.46.

ACI's position, adopted in full by First State, is that the term gross loss covered means only that portion of the entire indebtedness of Victoria to Enka which is protected by the ACI insurance policy, prior to any deductions. According to this defini-

tion, gross loss covered can never exceed the policy amount of $300,000, and in this case is $300,000.

The claim settlement portion of the policy unequivocally supports the conclusion that the "gross loss covered, filed and proved" in this case is $546,349.46. In calculating the amount payable to the insured, certain specified deductions are made from the gross loss covered, filed and proved to arrive at a preliminary net loss figure. Only at that point is the policy coverage of $300,000 considered: the policy deductible of $50,000 is subtracted from the net loss figure and ACI is liable for the remainder not exceeding the policy amount, which is stated to be $250,000. It is entirely sensible that the policy coverage of $300,000 does not come into play until a net loss figure is established, i.e., at the point where the insurer's actual dollar liability under the policy is being fixed. Furthermore, even if "gross loss covered, filed and proved" were an ambiguous term, also susceptible to the meaning urged upon us by the defendant-insurers, the trial court's definition alone harmonizes with those principles of insurance law that a policy is to be construed in favor of coverage and against the insurer who selected its language, e.g., *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 266 N.C. 430, 146 S.E. 2d 410 (1966), while defendants' definition is in defiance of those principles.

## II

[6] In addition to the foregoing arguments made jointly by ACI and First State, First State also advances two separate defenses to liability based on its excess insurance policy. It first argues that the trial court erred in failing to dismiss plaintiff's complaint against it and in awarding plaintiff any sum from First State because Akzona failed to maintain $300,000 of primary insurance from ACI as required by the First State policy. First State reasons that although the gross amount covered by the ACI policy is $300,000, because that policy contains a $50,000 deductible, plaintiff only obtained $250,000 worth of primary insurance, and that therefore no valid contract of insurance ever existed between plaintiff and First State. The record makes it abundantly clear that First State consistently maintained at each stage of the litigation that plaintiff retained $300,000 worth of primary in-

surance through ACI. First State is therefore precluded from taking a contrary position on this appeal.

First, defendant First State admitted in its answer to Akzona's complaint that the ACI credit policy had policy limits in the amount of $300,000. An admission of fact contained in a pleading is conclusively binding upon the party making it. *Norburn v. Mackie*, 262 N.C. 16, 136 S.E. 2d 279 (1964).

Second, shortly before the summary judgment hearing, counsel for all parties signed written stipulations of fact. One of these stipulations recites that the ACI policy insured Akzona against loss due to the insolvency of Victoria "up to the policy limits of $300,000.00 less a Primary Loss of $50,000.00 . . ."; another stipulation states that the First State policy insures Akzona against loss in excess of the $300,000 loss coverage provided by ACI. First State seeks here to directly controvert a fact to which it has already stipulated. This it may not do. Like an admission in a pleading, a stipulated fact is a judicial admission, having the force of a jury verdict, and binding in every sense. A party making a stipulation may not afterwards take a position inconsistent therewith. *Thomas v. Poole*, 54 N.C. App. 239, 282 S.E. 2d 515 (1981), *review denied*, 304 N.C. 733, 287 S.E. 2d 902 (1982).

Third, First State failed to except to the finding of fact in the final judgment that at all relevant times $300,000 of primary insurance was in effect under the ACI policy, which it was required to do in order to preserve its right to raise this issue on appeal. Rule 10, N.C. Rules of App. Proc. First State also never raised its contention concerning lack of primary coverage at any point during the trial stage, and such contention therefore may not be raised for the first time on appeal. *White v. Pate*, 308 N.C. 759, 304 S.E. 2d 199 (1983).

Fourth, we respond to the contention advanced in oral argument by First State, that the phrase "policy limit of $300,000" used in its answer and in the stipulations has a different meaning from the phrase it uses in arguing that the policy is a nullity, *i.e.*, "primary insurance of $300,000." Based on its view that the two terms have different meanings, First State concludes it is not precluded from arguing here on appeal Akzona's failure to maintain adequate primary coverage. We reject First State's semantic

distinction between the terms "policy limit" and "primary insurance."

We note that as part of its answer, First State alleges that had Akzona timely filed with ACI, First State's indebtedness to Akzona would not have exceeded $121,000. This defense, consistent with the theory that if Akzona had timely filed with ACI, First State would have incurred some liability, is therefore tantamount to an admission that a valid policy of excess insurance existed between First State and Akzona. It is inconsistent with First State's position on appeal that a valid contract of insurance never existed between the parties.

Furthermore, the two policies were virtually sold to plaintiff as a "package deal." The record shows that ACI and First State were familiar with each other, and familiar with the nature and content of their insurance policies. Enka's former treasurer testified that ACI acted as broker for the plaintiff in procuring the excess insurance policy from First State; ACI's primary policy states that the compulsory filing endorsement is activated by the obtaining of excess coverage "from the First State Insurance Company."

Finally, even had First State not conclusively waived its right to argue on appeal that the ACI policy did not provide $300,000 of primary coverage, its contention that the policy did not provide $300,000 worth of coverage because it had a $50,000 deductible is erroneous. The policy states that the gross amount covered is $300,000, that the primary loss, *i.e.*, deductible, is $50,000, and that the policy amount is $250,000. This, in our opinion, complies with the condition in the First State policy requiring that plaintiff retain $300,000 of primary insurance from ACI. First State was not liable until $300,000 of loss, which loss was covered by the ACI policy, had been sustained by the plaintiff on the Victoria account.

[7] First State's other separately argued defense to liability is that the trial court erred in failing to dismiss plaintiff's complaint against it based on the following condition in its policy:

> [N]o claim for loss shall be made nor shall any claim for loss be allowed under this Policy unless it shall have first been determined to be a valid and legally sustainable indebtedness

admitted as a file [sic] and proven loss by the Primary Insuror under its primary policy . . . .

First State argues that Akzona cannot bring any action against it until a "final mandate" is issued by this Court or by the North Carolina Supreme Court, or alternatively, that interest shall not run on any sum Akzona might recover from First State until the date of such final mandate.

Examination of the record reveals that nowhere did First State make a motion to dismiss; rather, it reveals that First State signed a stipulation that it had been properly served and joined. Again, not only is First State precluded from arguing that this action should have been dismissed against it for the first time on appeal, *White v. Pate, supra*, it is bound by its stipulation that it had been properly joined. *Thomas v. Poole, supra.* Even if First State had not so stipulated, it was properly joined as a party defendant. Our Rules of Civil Procedure permit parties to be joined as defendants when the right to relief asserted against them arises from the same transaction or occurrence. Rule 20, N.C. Rules Civ. Proc. Clearly, any right to relief available to Akzona from both ACI and First State arises from the facts and circumstances surrounding Victoria's insolvency.

We further observe that the quoted policy provision by its terms does not require a final appellate mandate before suit may be brought by the insured against the excess insurer. Its effect on this case was properly taken into account by the trial court, which recognized that First State's liability could only be determined after ACI's liability was determined. Consequently, it concluded that First State's liability for interest runs from the date of judgment, that is, the date on which ACI's liability was proven. We have found no authority in this State requiring that a final appellate judgment be rendered before interest can be assessed against a party. *See* G.S. 24-5.

Affirmed.

Judges BRASWELL and EAGLES concur.