W & J RIVES, INC., PLAINTIFF v. KEMPER INSURANCE GROUP D/B/A LUMBERMENS MUTUAL CASUALTY COMPANY, AND AETNA CASUALTY AND SURETY COMPANY, DEFENDANTS

No. 8818SC464

(Filed 20 December 1988)

1. **Insurance §§ 143, 6.1— property insurance—excess coverage exclusion—meaning of exclusionary clause**

    An exclusionary clause in an insurance policy for property damage did not apply where plaintiff Rives provided transportation of unfinished materials and finished garments for one of its largest customers, Polo Fashion, Inc.; Rives purchased from an insurance agency a package of insurance to insure the Polo goods while in Rives' possession; Kemper was the underwriter for the coverage; Aetna issued an excess umbrella policy to Rives as part of a renewed insurance package; Rives' trailer and an entire load of Polo shirts were stolen; Kemper paid only part of the claim; and Aetna refused the claim under an exclusionary clause for property "to the extent that the insured has agreed to provide insurance therefor," claiming that the policy did not apply if Rives had contracted with Kemper to provide coverage. Rives had not agreed with Polo at the time of the theft to provide insurance for the Polo materials and goods; thus, it would seem that a reasonable person in Rives' position would have understood that the Polo goods were covered by Aetna's policy.

2. **Insurance § 143— property insurance—coverage distinguished from liability**

    The trial court did not err in an action for a declaratory judgment against two insurance companies by granting summary judgment against Aetna on a claim that Aetna was to provide excess coverage and a defense. Coverage under an insurance policy and liability to pay are not synonymous terms; although Aetna may ultimately have no liability to pay any excess damages, its policy does include within its scope the type of potential damages claimed by Polo.

3. **Insurance § 143— excess insurance—duty to defend—exhaustion of underlying liability**

    An excess insurer had a duty to defend, despite its contention that a section of the policy clearly stated that the duty to defend arose only after the exhaustion of the underlying limit of liability by "payment of claims," because the duty to defend would otherwise arise only after the need for defense was past.

4. **Declaratory Judgment Act § 4.3— insurance—clarification of rights of parties—action proper**

    A declaratory judgment action by an insured to have the rights and relations between the insured and insurers clarified was proper under N.C.G.S. § 1-254, despite the insurer's argument that a provision of the policy made the action premature.

.

APPEAL by defendant from *Collier, Judge.* Order entered 3 December 1987 in Superior Court, GUILFORD County. Heard in the Court of Appeals 30 November 1988.

Plaintiff (Rives) is a company primarily engaged in cutting, sewing and processing garments to the specifications of its customers using the customers' materials, patterns and labels. Polo Fashion, Inc. (Polo) is one of Rives' largest customers.

In 1982, because of problems associated with Polo's use of common carriers, Rives agreed to undertake the transportation of the unfinished materials from, and the finished garments to Polo. Rives purchased from Jones & Peacock, Inc. (Jones & Peacock), an insurance agency, a package of insurance to insure the Polo goods while in Rives' possession. Kemper Insurance Group (Kemper) was the underwriter for the policy coverage and Kemper was advised, according to Jones & Peacock, that the insured materials and goods were not owned by Rives. However, the initial coverage was for "owned goods" in the amount of $140,000. According to Jones & Peacock, Kemper decided this was the best way to insure the items, even though they were not owned by Rives.

In 1984, because of the purchase of a larger trailer and rig, Rives contacted Jones & Peacock about increasing the amount of policy coverage. Kemper increased the coverage to $300,000, again, with the alleged knowledge that the items insured were bailed, not owned.

Rives decided to "back haul" unrelated items after depositing the finished goods with Polo. Kemper added to the existing policy, coverage for these "non-owned" goods in the amount of $140,000.

On 12 April 1985, the Rives rig and a whole load of finished Polo shirts were stolen. Rives made a claim upon Kemper for the initial estimate of value of the shirts which was $250,000. Kemper honored the claim, but only paid $140,000 asserting that the shirts were "non-owned" goods.

On 3 November 1986, Polo filed an action against Rives in New Jersey for the balance of the damages for the stolen shirts. Polo sued for $184,250 above the $140,000 paid by Kemper.

Aetna Casualty and Surety Company (Aetna), through Jones & Peacock, and as part of the renewed insurance package sold to Rives in September of 1984, issued an excess umbrella policy to Rives. This policy was in effect when the Polo shirts were stolen. Aetna notified Rives that its excess policy did not cover the loss of the Polo shirts because they were bailed goods and excluded under the policy. Aetna further refused to defend Polo's action against Rives.

Rives filed a complaint against Kemper and Aetna seeking, *inter alia*, a declaratory judgment that Kemper is liable to provide coverage to the extent of $300,000 and a defense to the Polo action. Rives also claimed that Aetna is to provide excess coverage to the extent of $5,000,000 and also provide a defense.

Rives included in its complaint a motion for partial summary judgment upon its declaratory judgment claims. On 1 December 1987, the trial court granted Rives' motion against Aetna, but denied its motion against Kemper. From that order granting Rives' motion, Aetna appeals.

*Wyatt, Early, Harris, Wheeler & Hauser, by William E. Wheeler and Frederick G. Sawyer, for plaintiff appellee.*

*Smith, Helms, Mulliss & Moore, by J. Donald Cowan, Jr. and Diane P. Bishop, for defendant appellant.*

ARNOLD, Judge.

[1] Aetna first assigns as error the entering of summary judgment by the trial court because Polo's claim falls within an exclusion to the coverage provided by the Aetna policy.

"Coverage" under the policy issued by Aetna to Rives reads as follows:

2.1 COVERAGE. The company will pay on behalf of the insured the ultimate net loss in excess of the applicable underlying limit which the insured shall become legally obligated to pay as damages because of

A. Personal Injury.

B. Property Damage, or

C. Advertising Offense

to which this policy applies, caused by an occurrence any-
where in the world, . . . .

This coverage section is broad and Aetna narrows it with several
exclusions.

The exclusion claimed by Aetna to be applicable to Polo's
claim is

2.2 EXCLUSIONS. This policy does not apply:

\*      \*      \*      \*

(e) to property damage

(1) to any property rented to, used or occupied by or in
the care, custody or control of the insured.

(i) to the extent that the insured has agreed to provide in-
surance therefor; . . . .

Aetna argues that the language "that the insured has agreed to
provide insurance therefor" means that if Rives has agreed with
Kemper to contract for insurance, then the Aetna policy does not
apply. Rives claims, *inter alia,* that this same language means
that for the exclusion to apply, Rives must have agreed with Polo
to provide insurance which Rives never did.

The basic principle of insurance law is that policies are to be
given a reasonable interpretation. *Akzona Inc. v. Am. Credit
Indem. Co. of New York,* 71 N.C. App. 498, 322 S.E. 2d 623 (1984).
Further, an insurance contract should be construed as a reasona-
ble person in the position of the insured would have understood
it. If the language used in the policy is reasonably susceptible to
different constructions, it must be given the construction most
favorable to the insured. *Grant v. Emmco Ins. Co.,* 295 N.C. 39,
243 S.E. 2d 894 (1978).

Rives originally negotiated with Jones & Peacock to obtain
insurance for the items Rives was transporting for Polo. On 1
September 1984, as a part of the renewal of the insurance pack-
age, Rives purchased the excess policy from Aetna. It would be
difficult to maintain that Rives did not intend for the excess
coverage to apply to the goods for which the insurance was pur-

chased. Aetna claims, however, that the Polo goods are excluded focusing on the "agrees to insure" language of § 2.2(e)(1)(i).

The purpose of an exclusionary clause in an insurance contract is to limit the liability of the insurance company. *South Carolina Ins. Co. v. Smith*, 67 N.C. App. 632, 313 S.E. 2d 856, *rev. denied*, 311 N.C. 306, 317 S.E. 2d 682 (1984). Such clauses are not favored by the courts and will be construed against the insurance carrier and in favor of coverage for the insured. *Stanback v. Westchester Fire Ins. Co.*, 68 N.C. App. 107, 314 S.E. 2d 775 (1984).

The record here shows that Rives began transporting Polo's materials and goods as an ancillary undertaking to its primary business of processing garments. Like any prudent business, Rives sought insurance for these items it was hauling; this was not to protect Polo, although that was the effect, but to protect itself from liability. Rives contacted Jones & Peacock about purchasing insurance for the Polo materials and was sold a package of insurance. In September of 1984, as part of the renewal of that package insurance, Rives purchased the Aetna policy.

Rives had not agreed with Polo, at the time of the theft, to provide insurance for the Polo materials and goods. Thus it would seem that a reasonable person in the position of Rives would have understood that the Polo goods were covered by Aetna's policy. The exclusion clause, therefore, does not apply to the Polo claim.

[2]  Aetna next contends that even if the damages sought by Polo are not excluded under the policy, coverage cannot be determined until an adjudication or settlement of Polo's claims against Rives, and issues of fact regarding coverage by Kemper's policy, are resolved.

Coverage under an insurance policy and liability to pay are not synonymous terms. The trial court did not order that Aetna had any liability to pay excess damages. The court simply stated that the Aetna policy covered the claim filed by Polo against Rives.

Coverage is defined as "protection by an insurance policy; an inclusion within the scope of a protective or beneficial plan." Webster's Third New International Dictionary (1968). Although Aetna may ultimately have no liability to pay any excess dam-

ages, its policy does include within its scope the type of potential damages claimed by Polo. Aetna's argument, carried to its logical conclusion, would have coverage under its policy determined only after a final adjudication of the insured's liability.

[3] Aetna claims that even if the damages sought by Polo are not excluded by the policy, Aetna has no duty to defend until Kemper actually pays the amount it is adjudged or settled that Kemper must pay.

Section 2.3 of Aetna policy reads as follows:

> (a) The company shall defend any suit seeking damages which are not payable on behalf of the insured under the terms of the policies of Underlying Insurance described in Section 1 or any other available insurance
>
> > (1) because such damages are not covered thereunder, or
> >
> > (2) because of exhaustion of an underlying limit of liability by payment of claims.

Aetna argues that this section clearly states that the duty to defend arises only after the exhaustion of the underlying limit of liability "by payment of claims." It contends that this is the only logical interpretation when read with § 6.3 of the contract, which states:

> (b) Claim or Suit. When in the judgment of the company an occurrence may involve damages in excess of the applicable underlying limit, the company may elect at any time to participate with the insured and the underlying insurers in the investigation, settlement and defense of all claims and suits in connection therewith. In such event the insured and the company shall cooperate fully.

We read § 6.3(b) as giving Aetna the right to enter into a defense of Rives before it is apparent that there may be excess liability.

If this Court were to accept Aetna's argument, then the duty to defend under this contract would arise only after Rives' need for defense was past.

Under a liability type contract, an insurance company contracts to do two things: first, it contracts to pay, and secondly it

contracts to defend. *Insurance Co. v. Insurance Co.*, 269 N.C. 358, 152 S.E. 2d 513 (1966).

> It will be observed that the first of these undertakings requires the [insurance] company to step into the shoes of [its insured] and pay a sum for the payment of which he became liable. The second undertaking is not of that nature. In the performance of it the company does not step into the shoes of the policyholder. Its liability under that undertaking is not contingent upon the existence of a liability on his part, and its performance of that undertaking does not impose any liability upon him. That undertaking is absolute.

*Id.* at 361, 152 S.E. 2d at 516.

Concerning the duty to defend, the Supreme Court has stated:

> When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable. . . .
>
> Where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy, the duty to defend is not dismissed because the facts alleged in a third-party complaint appear to be outside coverage, or within a policy exception to coverage.

*Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 340 S.E. 2d 374, 377, *reh. denied*, 316 N.C. 386, 346 S.E. 2d 134 (1986) (citations omitted).

The duty to defend is an important part of any insurance contract. To claim that the duty arises only after final adjudication of liability does not comport with the law of defense duty. *See Insurance Co.*, 269 N.C. 358, 152 S.E. 2d 513. Therefore, we conclude that Aetna does have a duty to defend against Polo's claims.

[4] Finally, Aetna's argument that Rives' action is premature under the terms of the policy is also unacceptable.

Section 6.6 of the Aetna policy reads in part:

> Action Against Company. No action shall lie against the company unless, as a condition precedent thereto, the insured

shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured the claimant and the company.

Under § 1-254 of the North Carolina Declaratory Judgments Act, any person under a contract may have determined any question of construction or validity arising under the instrument and may obtain a declaration of rights, status or other legal relations. N.C.G.S. § 1-254.

Plaintiff brought a declaratory judgment action to have the rights and relations between the insured and insurers clarified. This is quite proper under § 1-254. *Greensboro v. Reserve Ins. Co.*, 70 N.C. App. 651, 321 S.E. 2d 232 (1984).

Affirmed.

Judges WELLS and COZORT concur.