**TOVAR-MAURICIO v. T.R. DRISCOLL, INC.**

[231 N.C. App. 147 (2013)]

JORGE TOVAR-MAURICIO, EDEMIAS DELEON MORALES, MARIO M. TOVAR,
RANULFO DELEON VASQUEZ, BERNABE FRANCISCO CALIXTO, TOMAS MARTINEZ
GUERRERO AND GABRIEL DOMINGUEZ-CONTRERA, EMPLOYEES, PLAINTIFFS-APPELLEES
v.
T.R. DRISCOLL, INC., EMPLOYER, GENERAL CASUALTY INSURANCE COMPANY,
CAROLINAS ROOFING AND SHEET METAL CONTRACTORS SELF-INSURED FUND,
CARRIER, DEFENDANTS-APPELLANTS

No. COA13-517

Filed 3 December 2013

1. **Workers' Compensation—general casualty policy—no coverage in North Carolina**

    The Industrial Commission did not err in a workers' compensation case by concluding that the General Casualty policy afforded no coverage for plaintiffs' claims filed in North Carolina. The record indicated that plaintiffs received compensation under the workers' compensation laws of Virginia.

2. **Workers' Compensation—fund agreement—coverage**

    The Industrial Commission did not err in a workers' compensation case by concluding that the Fund Agreement afforded coverage for plaintiffs' claims.

3. **Appeal and Error—preservation of issues—failure to challenge findings of fact or conclusion of law—parol evidence—intent**

    Although defendant insurance carrier contended that the Industrial Commission erred in a workers' compensation case by considering parol evidence to determine the intent of the general casualty policy, it failed to challenge a finding of fact as unsupported by competent evidence or a conclusion of law as not justified by the findings of fact.

4. **Workers' Compensation—general casualty policy—intent—reliance on agency relationship**

    The Industrial Commission did not err in a workers' compensation case by relying upon the alleged agency relationship between Davis-Garvin and the employer to determine the intent of the General Casualty policy. Even if defendant insurance carrier could demonstrate some error in a finding regarding agency, it could not demonstrate that the finding undermined a conclusion of law such that it justified reversal of the Commission's order.

5. **Workers' Compensation—failure to reimburse benefits—claims transferred to North Carolina**

> The Industrial Commission did not err in a workers' compensation case by failing to award General Casualty reimbursement for benefits it paid to plaintiffs after they transferred their workers' compensation claims to North Carolina. N.C.G.S. § 97-86.1(d) does not permit repayment for compensation paid under the order of another state.

Judge DILLON concurring in part and dissenting in part in separate opinion.

Appeals by Defendants General Casualty Insurance Company and Carolinas Roofing and Sheet Metal Contractors Self-Insured Fund from opinion and award entered by the North Carolina Industrial Commission on 21 December 2012. Heard in the Court of Appeals 24 September 2013.

*Diener Law, by Cynthia E. Everson, for Plaintiffs-Appellees.*

*Orbock Ruark & Dillard, PC, by Roger L. Dillard, Jr. and Jessica E. Lyles, for Defendant-Appellee T.R. Driscoll, Inc.*

*Goodman McGuffey Lindsey & Johnson, LLP, by Adam E. Whitten, for Defendant-Appellant Carolinas Roofing and Sheet Metal Contractors Self-Insured Fund.*

*Teague Campbell Dennis & Gorham, LLP, by Brian M. Love and George H. Pender, for Defendant-Appellant General Casualty Insurance Company.*

McGEE, Judge.

T.R. Driscoll, Inc. ("Employer") is a company with a principal place of business in North Carolina. Employer intermittently sends its employees to work in other states, including Virginia. Employer joined the Carolinas Roofing and Sheet Metal Contractors Self-Insured Fund ("the Fund") in the early 1980s. Employer entered into an agreement with the Fund for workers' compensation insurance "coverage for North Carolina and South Carolina operations[.]" The Davis-Garvin Agency, Inc. ("Davis-Garvin") served as Employer's agent in purchasing insurance for "exposure not covered by the Fund." Davis-Garvin obtained workers' compensation insurance for Employer from Capital

**TOVAR-MAURICIO v. T.R. DRISCOLL, INC.**

[231 N.C. App. 147 (2013)]

City Insurance Company in 2005. General Casualty Insurance Company ("General Casualty") acquired Capital City Insurance Company in 2009.

Employer sent Jorge Tovar-Mauricio, Edemias Deleon Morales, Mario M. Tovar, Ranulfo Deleon Vasquez, Bernabe Francisco Calixto, Tomas Martinez Guerrero, and Gabriel Dominguez-Contrera ("Plaintiffs") to Virginia to work on a roofing project. Plaintiffs were injured in the course and scope of their employment when a gas line exploded on 29 November 2009. Plaintiffs filed workers' compensation claims in Virginia. General Casualty "accepted the claims as compensable pursuant to the Virginia Workers' Compensation Act and began making payments[.]" The North Carolina Industrial Commission found that, as "of November 2011, General Casualty has paid compensation and medical benefits pursuant to the Virginia Workers' Compensation Act to [Plaintiffs] in an approximate amount of $1,960,000.00."

In September 2010, Plaintiffs filed Form 33 Requests for Hearing with the North Carolina Industrial Commission, indicating that the parties had been unable to agree, noting only "change of jurisdiction from VA to NC[.]" General Casualty responded that "it provided no coverage to [Employer] for claims filed in North Carolina and that such claims were properly covered by the Fund."

The Commission found that Employer "had a valid workers' compensation insurance policy with General Casualty covering Georgia, Tennessee, and Virginia." The Commission also found that Employer "was covered for workers' compensation claims filed in North Carolina by [the Fund] at the time of Plaintiffs' injuries."

The Commission concluded that the Fund "is the insurance carrier on the risk for [Employer] for workers' compensation claims filed under the North Carolina Workers' Compensation Act[.]" The Commission did "not address the issue of Plaintiffs' disability or average weekly wages" because the hearing "was limited to the establishment of jurisdiction and carrier liability[.]" The Fund and General Casualty appeal.

## I. Standard of Review

"Appellate review of an award from the Industrial Commission is generally limited to two issues: (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." *Starr v. Gaston Cty. Bd. Of Educ.*, 191 N.C. App. 301, 304, 663 S.E.2d 322, 325 (2008). "Where there is competent evidence to support the Commission's findings, they are binding on appeal even in light of evidence to support contrary findings." *Id.*

at 304-05, 663 S.E.2d at 325. "The Commission's conclusions of law are reviewed *de novo*." *Id.* at 305, 663 S.E.2d at 325.

## II.  The Fund's Appeal

### A.  Conclusion "that the General Casualty Policy Affords No Coverage for Plaintiffs' Claims"

#### i.  Conclusion of Law 4

**[1]**  The Fund first argues that the "Commission erred in concluding that the General Casualty policy affords no coverage for Plaintiffs' claims[.]" The Fund fails to specify which conclusion of law it challenges on appeal. The only conclusion concerning General Casualty's coverage of Plaintiffs' claims is conclusion 4, quoted below:

> 4.  . . . . Based upon a review of the plain language of the General Casualty policy, North Carolina was not a covered state at any time during the policy, either before or after the modification by endorsement.

We interpret the Commission's language that "North Carolina was not a covered state" as meaning that "the General Casualty policy affords no coverage for the claims before the Commission, i.e. Plaintiffs' claims that were filed in North Carolina." We interpret the language in this manner because of the plain language in the General Casualty insurance policy: "We will pay promptly when due the benefits required of you by the workers compensation law." According to the policy, "Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page."

The "Information Page" lists Georgia, Tennessee, and Virginia:

> 3A.  Workers compensation insurance: Part one of the policy applies to the workers compensation law of the states listed here: GA, TN, VA

Where "the language of an insurance policy is plain, unambiguous, and susceptible of only one reasonable construction, the courts will enforce the contract according to its terms." *Walsh v. Insurance Co.*, 265 N.C. 634, 639, 144 S.E.2d 817, 820 (1965); *see also Register v. White*, 358 N.C. 691, 599 S.E.2d 549 (2004).

The General Casualty policy is plain, unambiguous, and susceptible of only one reasonable construction. The General Casualty policy applies to benefits required by the workers' compensation laws of Virginia, in

this case. The Commission did not and indeed cannot award compensation except as required by the North Carolina Workers' Compensation Act. The Commission cannot award compensation under the laws of any state other than North Carolina.

The record indicates that Plaintiffs received compensation under the workers' compensation laws of Virginia. Thus, N.C. Gen. Stat. § 97-36 will apply in this case if future proceedings are instituted to determine the specific amount of compensation due Plaintiffs under our workers' compensation laws. *See* N.C. Gen. Stat. § 97-36 (2011) ("[I]f an employee . . . shall receive compensation or damages under the laws of any other state nothing herein shall be construed so as to permit a total compensation for the same injury greater than is provided for in this Article."). The Commission did not err in concluding that the General Casualty policy affords no coverage for Plaintiffs' claims filed in North Carolina.

### ii. Liability under Virginia Workers' Compensation Law

The Fund requests this Court to "hold that General Casualty is liable to the Plaintiffs injured in Virginia, to the extent required by Virginia workers' compensation law, even after their claims are transferred to North Carolina for convenience." We note that the record indicates that the Commission ordered no such "transfer." Also, the Fund cites no provision in our General Statutes authorizing the Commission to "transfer" a claim from another state to North Carolina.

The conclusion that the General Casualty policy affords no coverage for these claims filed in North Carolina has no implications for General Casualty's liability under Virginia workers' compensation law. We therefore make no conclusions about General Casualty's past or continuing liability under Virginia law.

### B. Finding of Fact 28 and Conclusion of Law 5

[2] The Fund next argues the Commission erred in concluding that the Fund agreement affords coverage for Plaintiffs' claims. We disagree.

The Fund challenges finding of fact 28 and conclusion of law 5. Finding of fact 28 is as follows:

> 28. . . . . The Full Commission further finds that [Employer] was covered for workers' compensation claims filed in North Carolina by [the Fund] at the time of Plaintiffs' injuries.

Conclusion 5 states:

5. Under the terms of the workers' compensation insurance policy with the Fund, [Employer] was properly covered for workers' compensation claims filed in North Carolina. N.C. Gen. Stat. § 97-36[.]

The Fund directs this Court to the following language in the Fund agreement:

1. To the extent that coverage is afforded the Member under Article II of this Agreement, the Fund shall neither be obligated to pay nor incur defense costs with respect to the following:

a. Under Coverage A, for any liability, judgment or award rendered against the Member or the Fund by the governing authorities of a State not listed in the Preamble of this Agreement[.]

b. Under Coverage A, for any liability, judgment or award rendered against the Member or the Fund, pursuant to a workers' compensation law other than that identified in Article II, section 3 of this Agreement[.]

c. Under Coverages A and B, for operations conducted at or from any workplace if the Member has separate insurance for such operations[.] (emphasis added).

Coverage A refers to workers' compensation; Coverage B refers to "damages because of bodily injury or death[.]" The Fund agreement further states:

Coverage A - Workers' Compensation. The Fund will pay promptly from the funds received from or on behalf of the Members when due all compensation and other benefits which the Member is ordered to pay by the governing authorities of the state(s) listed in the Preamble, pursuant to the Workers' Compensation law named in Article II, paragraph 3 of this Agreement. (emphasis added).

Article II, section 3 refers to the "Preamble." The "Preamble" lists North Carolina and South Carolina.

The Fund agreement plainly states that the exclusions in subparts "a" and "b" apply to awards rendered by States other than North and South Carolina. Thus, we consider whether the exclusion in subpart "c" applies. The Fund concedes it would "be liable for any excess liability *above* the liability owed under Virginia law." The Fund contends that

"any such coverage is nevertheless extinguished by the operation of" subpart "c." However, the record indicates that Employer has no separate insurance for the Virginia operations for the purpose of claims filed with the North Carolina Industrial Commission. For the claims in this case, which were claims filed with the North Carolina Industrial Commission, only the Fund agreement is applicable. The Commission did not err in the finding or the conclusion regarding the Fund's coverage in North Carolina.

### C.  Parol Evidence

**[3]**  The Fund further argues the Commission erred in considering parol evidence to determine the intent of the General Casualty policy.

The Fund again fails to specify a finding of fact or conclusion of law to challenge on appeal. As stated above, our appellate review is limited to two issues: "(1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." *Starr*, 191 N.C. App. at 304, 663 S.E.2d at 325; *see also Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005); *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986).

Because the Fund fails to challenge a finding of fact as unsupported by competent evidence or a conclusion of law as not justified by the findings of fact, this argument falls outside the well-established scope of our review on appeal.

### D.  Agency Relationship

**[4]**  The Fund next argues the Commission erred in relying upon the alleged agency relationship between Davis-Garvin and Employer to determine the intent of the General Casualty policy.

The Fund again fails to specify a finding of fact or conclusion of law to challenge on appeal. Rather, the Fund contends that the issue "permeates the entire decision of the Full Commission." The Fund argues that evidence of "the knowledge or intent of Davis-Garvin . . . should not have formed the basis for the erroneous conclusions of law concerning the intent of the General Casualty policy and the efficacy of the attempted retroactive endorsement thereto."

However, the Commission held as follows:

> 8. As the Full Commission concludes that North Carolina was not a covered state either under the terms of the General Casualty policy, either before or after the modification by endorsement, the issues regarding the

retroactive application of the amended endorsement and reformation of the contract are moot and not addressed by this Opinion and Award.

Because of our holding in Section II.A., affirming the Commission's conclusion as to General Casualty's lack of coverage over claims filed in North Carolina, we do not address this argument. Even if the Fund could demonstrate some error in a finding regarding agency, the Fund could not demonstrate that the finding undermined a conclusion of law such that it justified reversal of the Commission's order.

### III. General Casualty's Appeal

[5] General Casualty's sole argument on appeal is that the Commission erred in failing to award General Casualty "reimbursement for benefits it paid to Plaintiffs after they transferred their workers' compensation claims to North Carolina."

General Casualty challenges only the following conclusion:

> There is no legal or contractual basis under the North Carolina Workers' Compensation Act that would entitle General Casualty to be reimbursed by the Fund for compensation already paid to Plaintiffs.

General Casualty cites N.C. Gen. Stat. § 97-86.1(d), quoted below:

> In any claim under the provisions of this Chapter wherein one employer or carrier has made payments to the employee or his dependents pending a final disposition of the claim and it is determined that different or additional employers or carriers are liable, the Commission may order any employers or carriers determined liable to make repayment in full or in part to any employer or carrier which has made payments to the employee or his dependents.

N.C. Gen. Stat. § 97-86.1(d) (2011).

General Casualty seems to imply that General Casualty has paid some compensation to Plaintiffs beyond that ordered by Virginia. However, the Commission made no such finding. The Commission found only that "General Casualty has paid compensation and medical benefits pursuant to the Virginia Workers' Compensation Act to [Plaintiffs] in an approximate amount of $1,960,000.00." (emphasis added). N.C.G.S. § 97-86.1(d) does not permit repayment for compensation paid under the order of another state. Rather, the statute refers only to where a carrier makes

payments pending a final disposition of "any claim under the provisions of this Chapter[.]" N.C.G.S. § 97-86.1(d).

The Commission did not err in making the challenged conclusion denying General Casualty reimbursement for compensation already paid to Plaintiffs.

## IV. Conclusion

As to the Fund's appeal, the Commission did not err in its findings and conclusions relating to General Casualty's coverage in North Carolina or the Fund's coverage in North Carolina. As to General Casualty's appeal, the Commission did not err in failing to award General Casualty reimbursement for amounts paid to Plaintiffs.

Affirmed.

Judge McCULLOUGH concurs.

DILLON, Judge, concurring in part and dissenting in part.

I concur with Section III of the majority's opinion affirming the Commission's order with respect to the issues raised in the cross-appeal filed by General Casualty Insurance Company ("General Casualty"). However, I respectfully dissent from Section II with respect to the appeal filed by the Sheet Metal Contractors Self-Insurance Fund (the "Fund") to the extent the majority holds that General Casualty is not obligated under its policy to provide coverage to its insured, T.R. Driscoll, Inc. (the "Employer"), for benefits that Plaintiffs may be awarded that would otherwise have been required to be paid under Virginia workers' compensation law had Plaintiffs sought said benefits in Virginia.

## I. Background

In this action, Plaintiffs are seeking workers' compensation benefits under North Carolina law arising from injuries that occurred while they were working on a job in Virginia. At the time of the accident, the Employer, which is based in North Carolina, was covered for workers' compensation claims under two separate insurance contracts, one provided by the Fund and the other by General Casualty.

In its order, the Commission determined that the Fund was solely liable to provide the Employer coverage for any benefits that the Commission may award Plaintiffs arising from the Virginia accident; and, therefore, dismissed General Casualty as a party to the proceeding.

The majority affirmed the Commission's order, holding that "[t]he Commission did not err in concluding that the General Casualty policy affords no coverage for Plaintiffs' claims filed in North Carolina." The issues encompassed in the Commission's order were, however, limited to "the establishment of jurisdiction and carrier liability[1][.]" In other words, the Commission has yet to determine the exact nature and amount of benefits that Plaintiffs will ultimately be awarded in the North Carolina proceeding.

I believe General Casualty's insurance contract provides coverage to the Employer for workers' compensation benefits that would be due under Virginia law for an accident occurring in Virginia, even if those benefits are ultimately sought and awarded under the laws of another state. Therefore, since it is unknown at this stage of the proceeding whether Plaintiffs will seek any benefits that would have been due under Virginia law had Plaintiffs sought those benefits in a Virginia proceeding, I believe the Commission was premature in concluding that the Fund is solely liable, to the exclusion of General Casualty, to provide coverage to the Employer for *all* the benefits that the Commission may award the Plaintiffs.

## II. Analysis

The Fund's contract provides coverage, *inter alia*, for benefits the Employer is "ordered to pay by the governing authorities of [North Carolina,]" but excludes from coverage, those "operations conducted at or from any workplace if [the Employer] has separate insurance for such operations." The Fund, here, argues that the Employer "has separate insurance" – provided by General Casualty – to provide benefits arising from the Plaintiffs' Virginia accident.

The provision at issue in the General Casualty policy provides that General Casualty will pay benefits as "required of [the Employer] by the workers compensation law [of Virginia]." General Casualty argues that this provision limits its exposure to pay benefits arising from claims actually *filed* in Virginia, and otherwise does not extend to any benefits

---

1. The interpretation of insurance contract language is, generally, determined by a trial court. However, our Supreme Court has held that the Commission is authorized, pursuant to N.C. Gen. Stat. § 97-91, to hear "'all questions arising under' the Compensation Act [which include] . . . the right and duty to hear and determine questions of fact and law respecting the existence of insurance coverage and liability of the insurance carrier." *Greene v. Spivey*, 236 N.C. 435, 445, 73 S.E.2d 488, 495-96 (1952); *see also Smith v. First Choice Servs.*, 158 N.C. App. 244, 248, 580 S.E.2d 743, 747, *disc. review denied*, 357 N.C. 461, 586 S.E.2d 99 (2003).

awarded in an action filed in another state, even where the accident occurs in Virginia and Virginia law *would* require benefits to be paid.

The Fund, on the other hand, argues that this provision is merely a "choice of law" provision; and, accordingly, General Casualty's obligation to provide the Employer coverage as required under Virginia workers' compensation law is not obviated simply because Plaintiffs chose to file for benefits for the Virginia accident in a state other than Virginia.

Neither party has cited a North Carolina case that is on point regarding the proper interpretation of the language in General Casualty's coverage provision. Rather, the parties cite cases from other jurisdictions in their briefs which illustrate the difference in judicial opinion throughout the United States regarding this issue. An Illinois appellate court has explained this difference as follows:

> [This coverage question has] produced two divergent lines of decisions. One line of cases agrees with [the employer] that alleged territorial limitation provisions are in fact choice of law provisions, not limiting coverage based on where the employee chooses to file his claim, but only to restrict benefit eligibility and to set indemnification limits based on the state law specified in the policy. This line of cases includes *Smith & Chambers Salvage v. Insurance Management Corp.*, 808 F. Supp. 1492 (E.D. Wash. 1992); *Sieman v. Postorino Sandblasting & Painting Co.*, 111 Mich. App. 710, 314 N.W.2d 736 (1981); *American Mutual Insurance Co. v. Duvall*, 117 N.H. 221, 372 A.2d 263 (1977); *Toebe v. Employers Mutual of Wausau*, 114 N.J. Super. 39, 274 A.2d 820 (App. Div. 1971); *Kacur v. Employers Mutual Casualty Co.*, 253 Md. 500, 254 A.2d 156 (1969); and *Weinberg v. State Workmen's Insurance Fund*, 368 Pa. 76, 81 A.2d 906 (1951). The other line of cases agrees with [the insurer] that, for there to be coverage, the claim must actually be filed in the state whose law is made to apply in defining the term "worker's compensation law." This line of cases includes *Travelers Insurance Co. v. Industrial Accident Comm'n*, 240 Cal. App. 2d 804, 809-10, 50 Cal.Rptr. 114, 118-119 (1966); *Lumber Transport, Inc. v. International Indemnity Co.*, 203 Ga. App. 588, 590, 417 S.E.2d 365, 366-67 (1992); *Foster Wheeler Corp. v. Bennett*, 1960 OK 186, 354 P.2d 764, 768 (Okla. 1960); *Consolidated Underwriters v. King*, 160 Tex. 18, 20, 325 S.W.2d 127, 129, 2 Tex. Sup. Ct. J. 338 (1959); *Rood*

*v. Nelson*, 14 Misc. 2d 859, 860-861, 178 N.Y.S.2d 969, 971 (1958); *Jones v. Henessy*, 232 La. 786, 793, 95 So.2d 312, 314 (1957); *Mandle v. Kelly*, 229 Miss. 327, 345, 90 So.2d 645; 649-50 (1956); and *Miller Brothers Construction Co. v. Maryland Casualty Co.*, 113 Conn. 504, 519-20, 155 A. 709, 714,-15 (1931).

*Szarek, Inc. v. Maryland Cas. Co.*, 357 Ill. App. 3d 584, 588, 829 N.E.2d 871, 875 (2005) (construing the policy language at issue as a "choice of law" provision).

Our Supreme Court has held "[a] difference of judicial opinion regarding proper construction of policy language is some evidence" that the policy language is ambiguous. *Brown v. Lumbermens Mut. Cas. Co.*, 326 N.C. 387, 392, 390 S.E.2d 150, 153 (1990) (citations omitted). I believe the language in General Casualty's policy is ambiguous on the issue; and, accordingly, I would hold that the General Casualty policy does provide coverage for the claims sought in North Carolina by Plaintiffs to the extent that the benefits would be required under Virginia workers' compensation law. *See W&J Rives, Inc. v. Kemper Ins. Group*, 92 N.C. App. 313, 316, 374 S.E.2d 430, 433 (1988), *disc. review denied*, 324 N.C. 342, 378 S.E.2d 809 (1989) (holding that "an insurance contract should be construed as a reasonable person in the position of the insured would have understood it [and that if] the language used in the policy is reasonably susceptible to different constructions, it must be given the construction most favorable to the insured"). I believe that the word "require" in the coverage provision could reasonably be construed to allow for either interpretation asserted by the two lines of cases described in *Szarek, supra*. I believe it is reasonable for the Employer to have assumed that the language in the General Casualty policy would provide coverage for accidents occurring in Virginia, to the extent that the listed state would require the insured to pay benefits, and that General Casualty could not avoid providing this coverage simply because Plaintiffs chose to file for benefits in another state that may also have jurisdiction.

If the interpretation propounded by General Casualty is adopted, then it is conceivable that a North Carolina employer who had policy with this provision – but providing coverage for benefits required under North Carolina law – would be afforded no coverage under its policy for an accident occurring in North Carolina where the employee chose to file for benefits in another state that might also have jurisdiction. For instance, another state may assert jurisdiction because the injured employee originally accepted the employer's offer of employment while in the that state. *See Murray v. Ahlstrom Indus. Holdings, Inc.*,

131 N.C. App. 294, 506 S.E.2d 724 (1998) (holding that North Carolina has jurisdiction over a claim arising from an accident in Mississippi because the original offer of employment was accepted over the telephone while the employee was in North Carolina).

General Casualty, which drafted the policy language, could have included language to clearly state that it was providing coverage only for claims "filed" in Virginia or, alternatively, for benefits that the Employer would be ordered to pay "by the regulating body" in Virginia. Indeed, the Fund's policy contains very specific language indicating that it would provide coverage to the Employer only as ordered "by the governing authorities of [North Carolina]." However, General Casualty chose not to include such language in its policy. Therefore, because I believe that the coverage language is ambiguous, I would construe this ambiguity against the insurer, General Casualty, and hold that the policy provides coverage for the claims filed in North Carolina to the extent that Virginia workers' compensation law would require General Casualty to provide benefits.