IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-951

Filed: 15 May 2018

Cumberland County, No. 13 CVS 6416

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Plaintiff,

v.

LAXMI HOTELS OF SPRING LAKE, INC.; CIENA CAPITAL FUNDING, LLC; and AMERICAN BUSINESS LENDING, INC., Defendants.

Appeal by plaintiff from order entered 18 April 2017 by Judge Mary Ann Tally in Cumberland County Superior Court. Heard in the Court of Appeals 22 February 2018.

*Attorney General Joshua H. Stein, by Assistant Attorney General Alvin W. Keller, Jr. and Assistant Attorney General James Aldean Webster, III, for plaintiff-appellant.*

*McCoy Wiggins Cleveland & McLean PLLC, by Richard M. Wiggins, for defendants-appellees.*

ZACHARY, Judge.

The North Carolina Department of Transportation ("DOT") appeals from the trial court's order granting defendant Laxmi Hotels of Spring Lake's ("Laxmi") 60(b) motion to set aside the parties' Consent Judgment. After careful review, we affirm.

I. Background

Laxmi owns real property abutting South Main Street in Spring Lake, upon which it operates a Super 8 Motel franchise ("the Hotel"). DOT intended to acquire a

portion of the Hotel's property in order to widen and improve South Main Street. On 8 February 2012, DOT right of way agent Greg Kolat met with Laxmi's president Dev Rajababoo and informed him that DOT would be exercising its power of eminent domain to take a portion of the Hotel's property in order to execute DOT's South Main Street project. Kolat informed Rajababoo that DOT was going to acquire a small portion of the property fronting South Main Street in addition to taking a permanent utility easement along the frontage of the property. According to Kolat's testimony and the DOT Negotiating Diary admitted into evidence, Kolat explained the DOT "acquisition procedure and why it is fair" to Rajababoo.

DOT maintains that Kolat informed Rajababoo that DOT would also build a retaining wall to run adjacent to South Main Street along the Hotel property; Rajababoo testified that no one from DOT told him about the retaining wall. The appraisal that DOT provided to Rajababoo showed a retaining wall along the property's frontage, but did not indicate the height of the prospective wall. Rajababoo also testified that DOT assured him that the Hotel would not lose any parking spaces as a result of the taking, and the appraisal did not indicate a loss of parking spaces.

Based on these plans, DOT's initial appraisal reflected a $25,700 "offer of just compensation" for the taking. On 6 June 2012, Laxmi made a counteroffer of $35,000. DOT accepted Laxmi's counteroffer; however, Laxmi was unable to obtain the consent of one of its lenders, so the parties did not complete the settlement at that time.

At some point after accepting Laxmi's counteroffer, DOT made various changes to its South Main Street project plans. These changes were reflected in a modified appraisal summary. The modified appraisal indicated that the right of way would be enlarged, and added a temporary construction easement and a slope easement. DOT provided Laxmi with a copy of the revised offer and appraisal summary, but Laxmi maintains that it was never orally informed by DOT of the change in construction plans. The revised appraisal reflected a settlement offer to Laxmi of $35,000 as just compensation for the taking, which Laxmi accepted. According to Laxmi, it believed that the increase of DOT's offer to $35,000 was in response to Laxmi's counteroffer rather than in response to an increase in the scope of the taking. On 23 July 2014, the parties entered into a Consent Judgment in which the parties agreed to settle for $35,000 as just compensation for the taking. DOT prepared the Consent Judgment.

Laxmi contends that it did not realize that DOT had changed its project plans until after construction began. The DOT project eliminated several of Laxmi's parking spaces, which caused the Hotel's parking lot to be in violation of local codes. In addition, when the Department completed construction of the retaining wall, the wall was roughly fifteen feet tall, completely blocking the Hotel's visibility from the street. The Hotel, which prior to the taking was fully visible from the main thoroughfares in the area, was, according to Rajababoo, now in a "dungeon." The

pictures taken after the construction show the Hotel to be invisible from the main roadways because of the retaining wall.

DOT maintains that it informed Laxmi of the plan changes by providing Laxmi with copies of the modified appraisal and increased settlement offer. In support of this contention, DOT points to the Consent Judgment, which incorporated by reference the revised project plans. However, the Consent Judgment "states there is a slope easement under a heading entitled 'TEMPORARY CONSTRUCTION EASEMENT,' but does not mention the height of the retaining wall or the loss of parking spaces."

In contrast, Rajababoo testified that he was never informed of the changes to the plans regarding the loss of parking spaces or the increased height of the retaining wall. At trial, no one from DOT testified that he or she told Laxmi or Rajababoo that DOT's plans had changed. While the documents that DOT provided to Laxmi mentioned a "retaining wall," no document, including the modified appraisal summary, referenced a loss of parking spaces. Moreover, while the retaining wall was mentioned, none of the documents indicated how tall that wall would be.

Rajababoo testified that he first discovered that the Hotel was going to lose parking spaces "[w]hen they were already gone. . . . They just started the work. And one fine day I come to work and all the land is bulldozed, and there's—they are putting in dirt to make a ramp to come in. . . . Nobody had ever approached me for

that." Laxmi maintains that "the construction of the wall in front of [the] hotel has severely impacted the value of the hotel . . . and that the taking of the additional parking space from the available usable parking spaces has also severely impacted the value of the hotel." When asked whether Laxmi would have entered into the Consent Judgment if it had been told about the wall or the loss of parking spaces, Rajababoo responded, "Absolutely no way."

On 15 February 2017, Laxmi filed a motion to set aside the Consent Judgment pursuant to Rule 60(b) of the North Carolina Rules of Civil Procedure. Laxmi's motion alleged that in persuading Laxmi to enter into the Consent Judgment, DOT misrepresented (1) the nature and extent of Laxmi's property that DOT intended to take, and (2) the effect that the taking would ultimately have on "the ability of [Laxmi] to operate or work on the site after the taking."

A hearing on Laxmi's motion was conducted before the Honorable Mary Ann Tally in Cumberland County Superior Court. Judge Tally determined that Laxmi "reasonably relied upon the representations made by [DOT]" and that Laxmi "was never informed of the loss of parking spaces or the change in the height of the retaining wall placed in front of the Hotel." Based on these facts, Judge Tally concluded that DOT "did not adequately inform [Laxmi] of the extent of the taking of the Hotel property, and did not provide just compensation to the Hotel." Judge Tally concluded that these facts warranted the setting aside of the Consent Judgment

pursuant to Rule 60(b)(6) of the North Carolina Rules of Civil Procedure. Accordingly, Judge Tally granted Laxmi's motion and ordered that the case proceed to trial in order to determine the appropriate amount of compensation for the taking. DOT timely appealed.

On appeal, DOT argues that the trial court erred in setting aside the Consent Judgment (1) because Laxmi's motion was not timely, and (2) because there was no substantive basis to justify overturning the judgment.

## II. Grounds for Appellate Review

We initially consider whether this Court has jurisdiction to review the trial court's order granting Laxmi's Rule 60(b) motion.

DOT maintains that this Court has jurisdiction over the trial court's order setting aside the Consent Judgment because the trial court's order "affects a final judgment" pursuant to N.C. Gen. Stat. § 7A-27(b)(1). However, even if we deem DOT's appeal to be interlocutory, DOT asserts that the trial court's order is immediately appealable because it affects a substantial right. Finally, in the event that this Court determines that the trial court's order does not affect a substantial right, DOT has filed a petition for writ of certiorari asking this Court to assert jurisdiction and address the merits of its arguments.

*A. Interlocutory Appeals*

This Court customarily entertains appeals only from final judgments. *See* N.C. Gen. Stat. § 7A-27(b) (2017). A judgment is final if it "leaves nothing further to be done in the trial court." *Campbell v. Campbell*, 237 N.C. App. 1, 3, 764 S.E.2d 630, 632 (2014) (citing *Steele v. Hauling Co.*, 260 N.C. 486, 491, 133 S.E.2d 197, 201 (1963)). In contrast, "[a]n order is interlocutory 'if it does not determine the issues but directs some further proceeding preliminary to final decree.' " *Waters v. Qualified Personnel, Inc.*, 294 N.C. 200, 207, 240 S.E.2d 338, 343 (1978) (quoting *Greene v. Laboratories, Inc.*, 254 N.C. 680, 693, 120 S.E.2d 82, 91 (1961)). Because an interlocutory order is not yet final, with few exceptions, "no appeal lies to an appellate court from an interlocutory order or ruling of the trial judge[.]" *Consumers Power v. Power Co.*, 285 N.C. 434, 437, 206 S.E.2d 178, 181 (1974).

DOT first argues that even though the order setting aside the parties' Consent Judgment was interlocutory, this Court nevertheless "has jurisdiction to review the trial court's order because it set aside a final judgment." This argument is not persuasive. Judge Tally's order set aside the Consent Judgment in order for the parties "to put on evidence at trial . . . to determine the amount of damages to which [Laxmi] is entitled pursuant to the General Statutes of North Carolina." Clearly, as it contemplates further proceedings at the trial level on the issue of just compensation—the crux of the Consent Judgment—Judge Tally's order is interlocutory. *See Campbell*, 237 N.C. App. at 3, 764 S.E.2d at 632.

However, notwithstanding its lack of finality, an interlocutory order may be immediately appealed if "the trial court certifies, pursuant to N.C.G.S. § 1A-1, Rule 54(b), that there is no just reason for delay of the appeal," *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009) (citation omitted), or if the "order deprives the appellant of a substantial right which he would lose if the ruling or order is not reviewed before final judgment." *Consumers Power*, 285 N.C. at 437, 206 S.E.2d at 181 (citation omitted); N.C. Gen. Stat. § 7A-27(b)(3)(a) (2017). "A substantial right is 'a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which one is entitled to have preserved and protected by law: a material right.' " *Gilbert v. N.C. State Bar*, 363 N.C. 70, 75, 678 S.E.2d 602, 605 (2009) (quoting *Oestreicher v. Am. Nat'l Stores, Inc.*, 290 N.C. 118, 130, 225 S.E.2d 797, 805 (1976)). "We consider whether a right is substantial on a case-by-case basis." *Id.*

In the instant case, the trial court did not certify the order setting aside the Consent Judgment for immediate appellate review. Nevertheless, DOT argues that "the trial court's setting aside the consent judgment deprived the Department of a substantial right, *i.e.*, the benefit of its bargain in the court-sanctioned settlement of the case." **[PWC p 15]** In support of its argument, DOT turns our attention to *Turner v. Hammocks Beach Corp.* We do not find *Turner* persuasive in the case at bar.

In *Turner*, the defendant had previously "filed a declaratory judgment action seeking to quiet title" to a tract of property which was the subject of a charitable trust. *Turner,* 363 N.C. at 557, 681 S.E.2d at 773. The plaintiffs contested the quiet title action and the case was set for trial. *Id.* However, "[p]rior to trial . . . , the parties reached a settlement and signed a consent judgment, which was entered by the trial court[.]" *Id.* Nearly twenty years later, the plaintiffs brought an action seeking termination of the trust "alleging that fulfillment of the trust terms has become impossible or impracticable[.]" *Id.* The defendant filed a motion to dismiss the plaintiffs' action on the grounds that the "plaintiffs' rights to the property now in question . . . had already been determined by [a prior] consent judgment and that relitigation is barred by collateral estoppel." *Id.* The trial court denied the defendant's motion to dismiss, which the defendant argued was immediately appealable because "the denial of a motion to dismiss a claim for relief affects a substantial right when the motion to dismiss makes a colorable assertion that the claim is barred under the doctrine of collateral estoppel." *Id.* at 558, 681 S.E.2d at 773. Our Supreme Court agreed with the defendant, and explained that "[u]nder the collateral estoppel doctrine, 'parties and parties in privity with them are precluded from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination.' " *Id.* (quoting *King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973)) (internal citations omitted) (alteration

omitted).  Thus, because the doctrine of collateral estoppel "is designed to prevent repetitious lawsuits," our Supreme Court concluded that the defendant had "a substantial right to avoid litigating issues that have already been determined by a final judgment." *Id.* at 558, 681 S.E.2d at 773.

Here, DOT cites the language from *Turner* and maintains that the trial court's order is immediately appealable because "parties have a substantial right to avoid litigating issues that have already been determined by a final judgment[,]" that is, the parties' Consent Judgment.  *Id.*  However, DOT overlooks "*why* our appellate courts hold that . . . collateral estoppel" triggers a substantial right: it "ensures that parties . . . are not forced to re-litigate issues that were *fully litigated* and *actually determined* in previous legal actions."  *Campbell*, 237 N.C. App. at 5, 764 S.E.2d at 633  (citing *Turner*, 363 N.C. at 558, 681 S.E.2d at 773) (emphasis added).  In this instance, the trial court's order setting aside the parties' Consent Judgment "will not force [DOT] to re-litigate [just compensation] issues that already were determined by a court in an earlier proceeding[,]" *Campbell*, 237 N.C. App. at 5, 764 S.E.2d at 633, nor would the denial of an immediate appeal require DOT to endure "repetitious lawsuits."  *Turner,* 363 N.C. at 558, 681 S.E.2d at 773.  In fact, the issue of just compensation was never "fully litigated"; rather, the Consent Judgment prevented the need for litigation, as it was designed to do.  *Id.*  "Indeed, in the only similar proceeding between the parties," Laxmi agreed to accept a settlement of $35,000 as

just compensation for DOT's taking, thereby "preventing the trial court from determining that issue on the merits." *Id.* In effect, DOT

> argues not that [it] is compelled to re-litigate an issue
> previously determined by a court, but instead that [it] must
> fully litigate—for the first time—an issue that [it] thought
> was precluded by the [consent] judgment [it] obtained. But
> that argument can be made in virtually every Rule 60(b)
> case and our appellate courts have long rejected it as a
> basis for immediate appeal.

*Campbell*, 237 N.C. App. at 5, 764 S.E.2d at 633 (citing *Waters*, 294 N.C. at 208, 240 S.E.2d at 344 (1978) and *Robinson v. Gardner*, 167 N.C. App. 763, 768, 606 S.E.2d 449, 452 (2005)). Collateral estoppel is thus no bar in the instant case. *See Turner*, 363 N.C. at 558-59, 681 S.E.2d at 773-74 ("To successfully assert collateral estoppel . . . , defendant would need to show that [an] earlier suit resulted in a final judgment on the merits [and] that the issue in question was identical to an issue *actually litigated* and necessary to the judgment[.]") (citation and quotation marks omitted) (emphasis added).

In that "no court has yet adjudicated" the just compensation issue in the instant case, DOT "cannot rely on our collateral estoppel precedent to immediately appeal the trial court's Rule 60(b) order." *Id.* Moreover, while DOT points out that the ultimate jury verdict in the instant case "may not be as favorable as the" Consent Judgment and that DOT would be liable for court costs and "interest on a jury verdict[,]" it has not offered an explanation as to why a verdict that demonstrates

that the Consent Judgment failed to provide Laxmi with just compensation would deprive *DOT* of a substantial right. *See e.g.*, *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994) ("It is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order; instead, the appellant has the burden of showing this Court that the order deprives the appellant of a substantial right[.]"). Accordingly, we conclude that the trial court's order setting aside the parties' Consent Judgment does not affect a substantial right and is therefore not immediately appealable.

## B. Petition for Writ of Certiorari

DOT has filed a petition for writ of certiorari asking this Court to invoke its powers under Rule 21 of the North Carolina Rules of Appellate Procedure in order to address the merits of the instant appeal, notwithstanding its interlocutory nature.

"The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals . . . when no right of appeal from an interlocutory order exists[.]" N.C. R. App. P. Art. V, Rule 21(a) (2017). Such "appropriate circumstances" exist when " 'review will serve the expeditious administration of justice or some other exigent purpose.' " *Amey v. Amey*, 71 N.C. App. 76, 79, 321 S.E.2d 458, 460 (1984) (quoting *Stanback v. Stanback*, 287 N.C. 448, 453, 215 S.E.2d 30, 34 (1975)).

In its petition for writ of certiorari, DOT explains that its "power to acquire rights of way and other interests by . . . condemnation" is crucial to its mission as a state department. According to DOT, it "has more than 1750 condemnation cases pending . . . across the State," approximately ninety-five percent of which are settled by consent judgment. We choose to exercise our discretion to grant certiorari so that this Court can address the merits of this matter.

### III. Rule 60(b)

Because we choose to grant DOT's petition for writ of certiorari, we must determine whether the trial court erred when it granted Laxmi's Rule 60(b) motion to set aside the Consent Judgment.

Where a final judgment or order has been entered in a particular case, Rule 60(b) will nevertheless allow for a party to obtain relief from that judgment or order "[o]n motion and upon such terms as are just[.]" N.C. Gen. Stat. § 1A-1, Rule 60(b) (2017). "Rule 60(b) has been described as 'a grand reservoir of equitable power to do justice in a particular case.'" *Sloan v. Sloan*, 151 N.C. App. 399, 404, 566 S.E.2d 97, 101 (2002) (quoting *Branch Banking & Trust Co. v. Tucker*, 131 N.C. App. 132, 137, 505 S.E.2d 179, 182 (1998)). Pursuant to Rule 60(b), a trial court may relieve a party from operation of a final judgment for the following reasons:

> (1) Mistake, inadvertence, surprise, or excusable neglect;
>
> (2) Newly discovered evidence which by due

diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

. . .

 (6) Any other reason justifying relief from the operation of the judgment.

N.C. Gen. Stat. § 1A-1, Rule 60(b) (2017).

This Court reviews a trial court's order granting a Rule 60(b) motion for abuse of discretion. *State ex rel. Davis v. Adams*, 153 N.C. App. 512, 515, 571 S.E.2d 238, 240 (2002) (citations omitted). "Our Supreme Court has stated that this Court should not disturb a discretionary ruling of a trial court unless it 'probably amounted to a substantial miscarriage of justice[.]' " *Sloan v. Sloan*, 151 N.C. App. at 404, 566 S.E.2d at 101 (quoting *Worthington v. Bynum*, 305 N.C. 478, 487, 290 S.E.2d 599, 605 (1982)). Otherwise, "[a] judge is subject to reversal for abuse of discretion only upon a showing by a litigant that the challenged actions are manifestly unsupported by reason." *Clark v. Clark*, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980) (citation omitted).

*A. Timeliness of Laxmi's Rule 60(b) Motion*

DOT first argues that the trial court erred in granting Laxmi's Rule 60(b) motion because Laxmi's motion was not timely filed.

"One of the conditions precedent that must be proven before a court will consider a Rule 60(b) motion is timeliness." *Bruton v. Sea Captain Properties, Inc.*, 96 N.C. App. 485, 488, 386 S.E.2d 58, 59 (1989). A Rule 60(b) motion for relief made pursuant to subsections (b)(1), (2), or (3), *supra*, must be made "not more than one year after the judgment, order, or proceeding was entered or taken." N.C. Gen. Stat. § 1A-1, Rule 60(b) (2017). Conversely, a motion made pursuant to Rule 60 (b)(6) (on the grounds of any other reason justifying relief), must only be brought forward "within a reasonable time[.]" *Id.* "What constitutes a reasonable time depends on the circumstances of the individual case." *McGinnis v. Robinson*, 43 N.C. App. 1, 8, 258 S.E.2d 84, 88 (1979) (citation omitted).

In the instant case, the trial court set aside the parties' Consent Judgment pursuant to Rule 60(b)(6). In order for the trial court to have properly granted Laxmi's Rule 60(b) motion pursuant to Rule 60(b)(6), Laxmi must have made its motion "within a reasonable time." DOT, however, maintains that the Consent Judgment could have been set aside *only* "on the limited grounds of fraud, mutual mistake, duress, or undue influence" pursuant to Rule 60(b)(3), rather than Rule 60(b)(6). DOT argues that Laxmi cannot circumvent the one year time limitation imposed under Rule 60(b)(3) "simply by failing to identify its arguments as falling within [that] section[]." Therefore, DOT contends that the trial court erred in granting Laxmi's

Rule 60(b) motion because the motion was not brought within the requisite one year period under Rule 60(b)(3).

DOT correctly notes that "Rule 60(b)(6) cannot be the basis for a motion to set aside judgment if the facts supporting it are facts which more appropriately would support one of the five preceding clauses." *Bruton*, 96 N.C. App. at 488, 386 S.E.2d at 59-60. "We have repeatedly held that a movant may not be allowed to circumvent the requirements for clauses (b)(1) through (b)([3]) by 'designating [the] motion as one made under Rule 60(b)(6)[.]' " *Id.* at 488, 386 S.E.2d at 60 (quoting *Akzona, Inc. v. American Credit Indem. Co.*, 71 N.C. App. 498, 505, 322 S.E.2d 623, 629 (1984)).

That facts illustrative of fraud and misrepresentation exist, however, does not mean that the trial court is limited to applying those facts as grounds for relief under Rule 60(b)(3). A trial court will err in couching a Rule 60(b) order in terms of Rule 60(b)(6) only to the extent that "the facts supporting [the motion] are facts which *more appropriately* would support" judgment under Rule 60(b)(3) rather than under Rule 60(b)(6). *Bruton*, 96 N.C. App. at 488, 386 S.E.2d at 59-60 (emphasis added). Even where a case involves various indicia of fraud or misrepresentation, relief may be appropriate pursuant to Rule 60(b)(6) if those facts are accompanied by circumstances that "justify[] relief from the operation of the judgment." N.C. Gen. Stat. § 1A-1, Rule 60(b)(6) (2017).

We conclude that the trial court did not abuse its discretion in concluding that the facts of the instant case more appropriately supported relief pursuant to Rule 60(b)(6), as explained in subsection *B* below. Accordingly, in order for Laxmi to be entitled to relief from the judgment pursuant to Rule 60(b)(6), Laxmi must have made its Rule 60(b) motion "within a reasonable time." N.C. Gen. Stat. § 1A-1, Rule 60(b) (2017).

In the instant case, we find no abuse of discretion on the part of the trial court in concluding that, under the particular circumstances of the case, Laxmi brought its Rule 60(b) motion within a reasonable period of time. While the Consent Judgment was filed on 23 July 2014, construction on the retaining wall did not begin until almost one year later, on 19 May 2015. The retaining wall was not completed until 22 October 2015. As the trial court noted, Laxmi "could not have sought relief from the judgment less than one (1) year after entry of the consent judgment because construction on the wall and the slope easement resulting in the loss of parking spaces was not completed until more than one (1) year after the entry of the consent judgment." Laxmi then filed its motion to set aside the Consent Judgment less than a year and a half after construction of the wall had completed. This, according to DOT, was an unreasonable delay. We do not find a year and a half delay to be so inherently unreasonable as to constitute an abuse of discretion. Rather, given the complexities of this case, we conclude that the trial court did not abuse its discretion when it

determined that Laxmi's "motion to set aside the judgment was brought within a reasonable time pursuant to Rule 60(b) of the North Carolina Rules of Civil Procedure."

*B. Substantive Grounds for Laxmi's Rule 60(b) Motion*

Lastly, the Department argues that the trial court erred in setting aside the Consent Judgment because there was no substantive basis to justify the trial court's order. We disagree.

As explained *supra*, Rule 60(b)(6) "authorizes relief from final judgments for 'any other reason justifying relief from the operation of the judgment.' " *Lumsden v. Lawing*, 117 N.C. App. 514, 517, 451 SE.2d 659, 661 (1995). "Relief is appropriate under Rule 60(b)(6) if 'extraordinary circumstances exist' and 'justice demands relief.' " *Id.* at 518, 451 S.E.2d at 662 (quoting *Thacker v. Thacker*, 107 N.C. App. 479, 481, 420 S.E.2d 479, 480 (1992)). While not technically a "catch-all" provision, Rule 60(b)(6) provides trial courts with a "vast reservoir of equitable power." *Lumsden*, 117 N.C. App. at 517, 451 S.E.2d at 661 (citation and quotation marks omitted). "The broad language of clause (6) gives the court ample power to vacate judgments whenever such action is appropriate to accomplish justice." *Brady v. Chapel Hill*, 277 N.C. 720, 723, 178 S.E.2d 446, 448 (1971) (citation and quotation marks omitted). Exercise of this equitable power is within the full discretion of the trial judge. *Thacker*, 107 N.C. App. at 482, 420 S.E.2d at 480 (citation omitted).

Initially, we note that DOT has not argued before this Court that the trial court abused its discretion when it concluded that the facts of the present case were sufficient to support the trial court's grant of relief to Laxmi pursuant to Rule 60(b)(6). Rather, DOT directs our attention to the conflicting evidence presented at the hearing to support its argument that there was not a sufficient showing of *fraud* to justify relief pursuant to Rule 60(b)(3). As explained *supra,* a trial court is not prevented from granting relief pursuant to Rule 60(b)(6) merely because the "extraordinary circumstances" involved contain aspects of fraud or misrepresentation.

In the instant case, we agree with Laxmi that extraordinary circumstances existed to support, and that justice so demanded, the trial court's setting aside of the Consent Judgment pursuant to Rule 60(b)(6).

The record is replete with evidence to support the trial court's conclusion that DOT "did not adequately inform [Laxmi] of the extent of the taking of the Hotel property." For instance, DOT maintains that its second offer of $35,000 provided notice to Laxmi that DOT had changed its project plans since the initial offer of $25,700. However, DOT's modified offer of $35,000—which DOT contends reflected the amended calculation of just compensation in light of the plan revisions—was the exact amount of Laxmi's counteroffer to DOT's initial offer of $25,700. Rajababoo testified that DOT "didn't tell me [the updated $35,000 offer] was for the change.

That's what we had asked for. There was no change mentioned to me. It was the amount we had countered with[.]" DOT, on the other hand, maintains that its "right of way agent explained the plan changes to Laxmi[.]" As the sole judge of credibility, the trial judge acted well within her discretion when she accepted Laxmi's version of events. *See e.g., Phelps v. Phelps*, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994) ("We note that it is within the trial court's discretion to determine the weight and credibility that should be given to all evidence that is presented during the trial."). The same principle applies to the remaining conflicting testimony that DOT urges us to consider on appeal.

Additionally, in attacking the substantive grounds on which the Consent Judgment was set aside, DOT maintains that "Laxmi, through reasonable diligence, could have requested additional information regarding the retaining wall and slope easement effects." Thus, according to DOT, it "had no duty to disclose additional information absent a request for it and violated no such duty." This contention is surprising, however, considering the representations made by the DOT Right of Way agent and the fact that Laxmi had no option but to enter into a transaction with DOT.

The present case does not involve two entities that were conducting arm's-length negotiations, in which it was clear that neither party had any incentive to act against its best interest. In fact, Kolat represented to Rajababoo that this was not a regular arm's-length transaction. Kolat's testimony was unambiguous: he explained

to Rajababoo that "the State's . . . looking out for . . . [the landowner's] best interest

. . . ."

> Q. . . . Line Item No. 2, it says, "Did you explain acquisition procedure and why it is fair," and a box mark is checked, what does that indicate? Can you just describe for us what you mean by explaining the acquisition procedure and why it's fair?
>
> A. The process --
>
> Q. Yeah.
>
> A. -- of the appraisal and explaining to them what's going to take place on their property, explain the process of fair market value, just compensation to the property owner, and I guess that's the way, you know, that *the State's, you know, looking out for, you know, their best interest, too.*
>
> Q. So the State is looking out for the landowner's best interest?
>
> A. Yes.
>
> Q. Did you tell them that --
>
> THE COURT: Wait a minute. What did you just say?
>
> THE WITNESS: I said the State would be--you know, they're concerned about the--you know, the property owner --
>
> THE COURT: Uh-huh. Uh-huh.
>
> THE WITNESS:
> --and how it affects what they're doing.
>
> ***

Q. (By Mr. Dantinne) And what do you mean by why it is fair?

A. I can't answer that. I don't know.

Q. Did you check the box saying that you explained why it was fair?

A. Well, yes, I explained it. *It's fair. It's the process. It's the DOT's policies and procedures.*

Q. Did you explain to him--

A. I followed the rules.

Q. *Did you explain to him that the appraisal conducted on the property is fair?*

A. *Yes, it would be fair.* And he has the opportunity to get one himself, also.

Q. Did you give him the appraisal that you told him was fair?

A. Yes.

In contrast to DOT's assertion that it "had no duty to disclose additional information," DOT was obligated to deal in a fair manner with Laxmi. The transaction was a *condemnation* proceeding—that is, a forced sale of Laxmi's private property for public use. As such, DOT was *required* to provide Laxmi with just compensation. *Eller v. Bd. of Educ.*, 242 N.C. 584, 586, 89 S.E.2d 144, 146 (1955) ("When private property is taken for public use, just compensation must be paid."); *Dep't of Transp. v. Rowe*, 353 N.C. 671, 676, 549 S.E.2d 203, 208 (2001) ("Just

compensation is clearly a fundamental right under both the United States and North Carolina Constitution.").

Such constitutional protections do not exist in ordinary arm's-length transactions, which is precisely why the facts at hand are not compatible with, and would not "more appropriately" support, the traditional elements of fraud and misrepresentation. *Bruton*, 96 N.C. App. at 488, 386 S.E.2d at 59-60. However, we find no abuse of discretion on the part of the trial court in concluding that the various *indicia* of fraud and misrepresentation, at the very least, established that DOT "did not adequately inform [Laxmi] of the extent of the taking of the Hotel property." Moreover, in light of the constitutional protections at hand, we are satisfied that the fact that DOT inadequately informed Laxmi of the extent of its taking was sufficient to establish "(1) that extraordinary circumstances exist, and (2) that justice demands relief." *Sloan*, 151 N.C. App. at 405, 566 S.E.2d at 101 (citing *Howell v. Howell*, 321 N.C. 87, 91, 361 S.E.2d 585, 588 (1987)). Accordingly, we are not convinced that the trial court abused its discretion when it concluded that relief was appropriate pursuant to Rule 60(b)(6) in light of such inadequate information.

In addition to its determination that DOT did not adequately inform Laxmi of the extent of the taking of the Hotel property, the trial court also determined that DOT did not provide just compensation to Laxmi. This finding is fully supported by the evidence.

Just compensation is measured by "the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking[.]"  N.C. Gen. Stat. § 136-112(1) (2017);  *Dep't of Transp. v. Mahaffey*, 137 N.C. App. 511, 517, 528 S.E.2d 381, 385 (2000) ("The measure of compensation provided by section 136-112 . . . provides 'just compensation' within the scope of both the federal and state constitutions.").

It is undisputed that the amount reflected in DOT's second appraisal did not account for the loss in parking spaces.  The DOT right of way agent who modified the appraisal testified that normally, "the taking of parking spaces would be considered" in an appraisal. The appraisal also did not account for the height of the retaining wall or the loss of visibility suffered by the Hotel. Moreover, DOT agreed to pay Laxmi the sum of $35,000 as just compensation for the taking, which was the same amount that the parties had agreed upon as just compensation two weeks *prior to* the revision of DOT's plans. If the sum of $35,000 was just compensation in May 2012 for a lesser taking, then it could not be just compensation in July 2014 after DOT substantially increased the scope of the taking. This evidence supports the trial court's finding that the Consent Judgment did not provide just compensation to Laxmi, and the trial court did not abuse its discretion in concluding that, in light of such constitutional deficiency, justice demanded relief  pursuant to Rule 60(b)(6).

Accordingly, we conclude that the evidence supports the trial court's determination that Laxmi was not adequately informed of the extent of DOT's taking of the Hotel property, and that the Consent Judgment did not provide just compensation for DOT's taking. In light of the constitutional protections involved, the trial court did not abuse its discretion when it concluded that these facts warranted the setting aside of the Consent Judgment pursuant to Rule 60(b)(6).

## IV. Conclusion

For the reasons expressed herein, the trial court's order setting aside the parties' Consent Judgment is

AFFIRMED.

Judges HUNTER, JR. and DIETZ concur.